IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION


ATTORNEY GENERAL JIM HOOD,
THE STATE OF MISSISSIPPI,
EX REL. THE STATE OF MISSISSIPPI                    PLAINTIFF

VS.                                 CIVIL NO. 3:15CV317HTW-LRA

FRED CANNON, ET AL.                                 DEFENDANTS




**MOTION HEARING**






BEFORE THE HONORABLE HENRY T. WINGATE
UNITED STATES DISTRICT JUDGE
AUGUST 17TH, 2015
JACKSON, MISSISSIPPI






REPORTED BY:  MARY VIRGINIA "Gina" MORRIS, RMR, CRR

_____

501 East Court Street, Suite 2.500
Jackson, Mississippi  39201
(601) 608-4187

**APPEARANCES**


FOR THE PLAINTIFF:

   MR. WILLIAM M. QUIN II
   MR. WILLIAM B. BARDWELL


FOR DEFENDANTS CANNON, ARTZER, DITSCH AND HACSKAYLO:

   MR. WILLIAM C. BRABEC
   MS. ALEXANDRA C. BOUDREAU
   MR. BENJAMIN B. MORGAN


FOR DEFENDANTS ALEXANDER, ROACH AND WHITLOCK:

   MR. JAMES P. STREETMAN III
   MR. PAUL E. COGGINS
   MS. LEAH NICHOLS LEDFORD


FOR DEFENDANTS VK SERVICES, LLC; KHOSLA VENTURES, LLC; KHOSLA
VENTURES ASSOCIATES II; KHOSLA VENTURES ASSOCIATES II, LLC;
KHOSLA VENTURES III, LP; KHOSLA VENTURES ASSOCIATES III, LLC;
SAMIR KAUL; DENNIS CUNEO; VINOD KHOSLA; KFT TRUST; VINOD
KHOSLA, TRUSTEE; AND VNK MANAGEMENT, LLC.:

   MR. JAMES DOUGLAS MINOR, JR.

1                       TABLE OF CONTENTS

2

3    Argument by Mr. Brabec  ..............................4

4    Argument by Mr. Quin  ...............................12

5    Argument by Mr. Brabec  .............................28

6    Argument by Mr. Minor  ..............................35

7    Argument by Mr. Quin  ...............................43

8    Argument by Mr. Brabec  .............................50

9    Argument by Mr. Minor  ..............................51

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1        THE COURT:  Morning.

2    (ALL RESPONDED "GOOD MORNING")

3    (PAUSE)

4        THE COURT:  Again, good morning.  I had asked for the

5    submission of some supplemental authority on an issue.  Let's

6    see.  I'll start with the defendants and let them discuss this

7    supplemental authority that has been submitted.

8        MR. BRABEC:  Yes, your Honor.  If the court will

9    recall, at the last hearing the issue concerning the ability of

10   the State to get a jury trial was discussed; and none of us up

11   here being bankruptcy lawyers, couldn't give the court a good

12   answer about how the right to trial by jury would interplay

13   with the bankruptcy court.  And so we had requested the court

14   leave to supplement on that particular issue, which we did.

15       Your Honor, I think it's very clear now what the law

16   is on jury trials in bankruptcy court.  First of all, as

17   Mr. Quin recognized last time, you can have a jury trial by

18   agreement of the parties if both parties consent and you have

19   the jury trial actually in the bankruptcy court.

20       However, if one or both of the parties do not consent

21   to a jury trial, the parties have the right to a jury trial in

22   district court where the bankruptcy court is pending.  And the

23   magis- -- I mean the bankruptcy court would serve as a

24   magistrate to handle all the pretrial matters, and then the

25   district judge would handle the actual jury trial.

1          The case law is pretty clear.  The State submitted a

2     response to our very short brief on that issue.  And in that

3     58-page response they couldn't come up with a single case that

4     held that the issue of -- the right to a trial by jury would

5     trump any other factor, much less the presumption -- the home

6     court presumption that has been recognized.

7          All of the cases that are the more recent cases since

8     it's been clearly established as to the right to a trial by

9     jury in the district court have really downplayed the issue of

10    a jury trial as being an important factor in transfer,

11    basically, because you're going to get a jury trial one way or

12    the other.  And so it's not an important factor, and certainly

13    it is not the determinative factor.  And so as we submitted

14    last week, it's only one of many factors; and we believe that

15    it's heavily outweighed by the home court presumption.

16         Your Honor, I know that in their reply the State went

17    into a number of other issues that the court didn't request

18    briefing on.  And while I'm prepared to address those, I really

19    think -- I understood the issue that the court wanted to be

20    heard was the jury trial issue, and we believe that's been well

21    settled.  So unless the court wants us to address those other

22    issues --

23         THE COURT:  While you're up there, why don't you go

24    ahead and do that.

25         MR. BRABEC:  All right, your Honor.  Under 28 U.S.C.

1412 there can be two reasons for transfer.  One is in the

interest of justice and the other is for the convenience of the

parties.  And it's an either-or situation.  There have been six

recognized factors under the interest of justice.

One is sufficiency and economics of the state

administration; two is the home court presumption; three is

judicial economy; four is fairness in the ability to receive a

fair trial of which the right to jury trial fall -- is a

subpart of that; and the state's interest in having local

controversies decided within its borders; and the plaintiff's

choice of forum.

No one is controlling, although the home court

presumption has been given heavy weight both in this district

and nationally.  The majority -- the clear majority rule is

that the home court presumption will apply unless it's

outweighed by the other factors.

Judge Lee recognize in *Everett v. Friedman* that it

should be for the bankruptcy court to make the determination of

whether a case may or should remain in federal court.  And,

likewise, Judge Jordan in the *Atlas v. Chrysler* case applied

the home court presumption as well and said that it was for the

bankruptcy to decide the issue of remand.  We believe that this

home court presumption outweighs all of the other factors by a

long shot, but I will go through the other factors on the

interest of justice as well.

```
 1          The efficiency and economics of the state
 2   administration:  That was discussed in detail at the first
 3   hearing, the interrelationship between the other bankruptcy
 4   motions and the claims here.
 5          Your Honor, Mr. Quin made the argument before that the
 6   State was not a party to the bankruptcy and, therefore, it
 7   shouldn't apply.  But I believe that if the court will look at
 8   the submission that was recently made by the State, the court
 9   will see that, one -- Exhibit 1 is the memorandum of
10   understanding, which is the -- which was submitted as a part of
11   the State's claim in bankruptcy.  That is the memorandum of
12   understanding which is the subject of this lawsuit.
13          Also the State of Mississippi specifically filed a
14   claim -- it was not just MDA.  It was titled "MDA, State of
15   Mississippi" in their proof of claim.  And that's reflected in,
16   your Honor -- I believe in footnote number 2 on Exhibit 2,
17   which was the adversary proceeding between KiOR, Inc., and both
18   MDA and the State of Mississippi.  So the State of Mississippi
19   has been actively involved in the bankruptcy.
20          The second factor under interest of justice is the
21   home court presumption, and I think that factor is controlling
22   here.  The third factor is judicial economy.  And, your Honor,
23   as the court has seen, there's not going to be -- at best this
24   is a neutral factor for the State.  And we would submit that it
25   weighs heavily in support of transfer as well because the
```

1   bankruptcy court's already familiar with all these issues and

2   it can get this thing resolved much faster.

3           Now, I know the State submitted some affidavits

4   talking about the ability to get a trial.  And if the court

5   looks at those affidavits, realize that -- that we wouldn't be

6   able to get a trial for two or three years in this case because

7   the dates that they got were for one-week trials.  And the last

8   affidavit that was submitted, the supplemental affidavit,

9   indicated that there was only one period in 2016 where the

10  circuit court had a two-week period open.

11          And that's assuming you can get through with discovery

12  and all of that, which is going to take much longer in state

13  court than it is federal court because we don't have -- we've

14  got a lot of out-of-state witnesses.  We're going to have to go

15  through the cumbersome procedure of getting letters rogatory

16  issued and getting process issued out of various state courts

17  to get these third parties deposed, which you don't have to do

18  in federal court, and of which the State has already availed

19  itself in the bankruptcy court.

20          The fourth factor is fairness and ability to receive a

21  fair trial.  The State does not contend that they can't get a

22  fair trial in bankruptcy court or in the district of Delaware.

23  And so that is a neutral factor, particularly since it's clear

24  that they could have a jury trial up there just like they could

25  have a jury trial down here.

1    The fifth factor is the State's interest in having

2  local controversies decided within its border.  And while

3  ostensibly that would seem to weigh in favor of the State, the

4  court needs to remember that for nearly eight months the State

5  actively pursued discovery and these claims through the

6  bankruptcy procedures and took extensive discovery on these

7  particular claims.

8    For example, your Honor, this right here is just one

9  deposition that was taken of my client Fred Cannon by Mr. Quin.

10  And the deposition dealt almost exclusively with issues that

11  are -- have bearing in this case.  So this --

12    THE COURT:  How many pages is that deposition?

13    MR. BRABEC:  Your Honor, it is 300- -- 325 pages.  So,

14  your Honor, we don't believe that the fifth factor weighs

15  heavily in favor of a transfer given the fact that the State

16  has already been comfortable in pursuing and moving within the

17  bankruptcy court and has availed itself of the benefits of the

18  bankruptcy court.

19    And then finally is the plaintiff's choice of forum,

20  which is a factor but not a strong factor.  It's outweighed by

21  the home court presumption.  And also when you have the issue

22  of forum shopping, which we contend applies here, the State --

23  there's no doubt that the State could have filed this in the

24  bankruptcy court and chose not to.

25    So we would submit that under the six factors in the

1    interest of justice that this case should be transferred where

2    the bankruptcy court knows the issues and it's much easier

3    for -- for them to weigh the effects that it's going to have on

4    the bankruptcy court than it is for us Mississippi lawyers who

5    haven't been involved in that bankruptcy.

6         Your Honor, the other method of transfer is for the

7    convenience of the parties.  And there are four factors that

8    can apply.  The first is the ease of access to sources of

9    proof.  And we would submit that the bankruptcy court with its

10   nationwide service and ability to use the federal rules would

11   weigh in favor of that.

12        The State has already taken advantage of that, as I've

13   said numerous times, with respect to the other factors.  But

14   that's an important -- an important factor under the

15   convenience of the parties portion of 28 U.S.C. 1412.

16        The location of the debtor's assets, books and

17   records:  That's somewhat of a neutral factor here because the

18   debtor's actually located in Texas.  And so it really doesn't

19   weigh one way or the other.

20        A very important factor, though, is the third factor,

21   the availability of compulsory process.  Your Honor, the State

22   wants this thing in circuit court in Mississippi.  If the state

23   rules apply, the availability of compulsory process is just

24   going to be just very -- much more difficult to get depositions

25   of the parties and third-party witnesses.

1          The fourth and final factor under the convenience of

2    the parties is the location of the parties and witnesses.  All

3    of -- all of the defendants, all 19 of them, are nonresident

4    defendants.  KiOR is a nonresident.  The State and its

5    employees are residents, but many of the -- the people who were

6    involved in this do not reside in Mississippi.

7          Since the time of this transaction, some of the key

8    MDA people have left the state of Mississippi, such as Mr. Gray

9    Swoope who is -- I believe he's in Florida or he may be in

10   another state now.  But he had -- he did transfer to Florida

11   and took a new job over there at one point in time.

12         We've got -- we've got the governor who, as the court

13   knows, spends most of his time in the Washington, D.C., area.

14   He will be an important witness in this case.  There are many

15   many witnesses who will -- who are not parties here that are

16   out of state.  In fact, there are very few in-state witnesses

17   that will apply -- that will have to testify in the case.

18         Your Honor, applying all these factors, it's clear

19   that there's nothing strong enough to overcome this home court

20   presumption that's been recognized by a majority of the courts

21   and by a majority of the judges in this particular district.

22   And for that reason, your Honor, we would submit that the

23   action be transferred to the bankruptcy court for the District

24   of Delaware.  Thank you.

25         THE COURT:  All right.  Thank you.  Now, are there any

1    other arguments on that side?

2          MR. MINOR:  Your Honor, I anticipate making an attempt

3    to distinguish some of the cases that are cited in the State's

4    brief.  I can do that after they argue or I can do it now.

5    It's whatever the court's pleasure is.

6          THE COURT:  Why don't we wait afterwards.

7          MR. MINOR:  Okay.

8          THE COURT:  All right.  Now to the State.

9          MR. STREETMAN:  No, your Honor, we have nothing.

10         THE COURT:  All right.  Thank you.

11         MR. QUIN:  Before I begin my presentation, I feel like

12   it's appropriate to simply ask the court if there are any

13   questions that are weighing on your mind before we begin.

14         THE COURT:  Go ahead.  Make your argument.

15         MR. QUIN:  As an initial matter, when we left court at

16   our last hearing, I understood the issue to be the impact of

17   the State's jury trial demand on the motion to transfer.  We

18   discussed in our last hearing issues of the Seventh Amendment.

19   We discussed whether bankruptcy courts could or should preside

20   over jury trials.  And it was in the context of that discussion

21   that we brought our brief, and we addressed four issues.

22         I see little need to belabor the first three of them

23   considering how it appears that they are conceded to.  But for

24   the interest of completeness, number one, the Seventh Amendment

25   guarantees the right to the State for a jury trial.  The Ninth

1  and Tenth Circuit Courts of Appeal have so held, as has the

2  Eastern District of Louisiana.

3          Secondly, the bankruptcy court does not absent the

4  consent of the State have the authority to impanel a jury.

5  That too is conceded, and that's statutory and constitutional

6  authority.

7          Number three, is the bankruptcy court's inability to

8  conduct a jury trial an appropriate factor for this court to

9  consider within the context of the motion to transfer?  And the

10 answer to that is very clearly yes.  But to the extent that our

11 opponents have said that we cited no case that says that, that

12 is demonstrably wrong simply by a reading of the briefs.

13         I could list the cases.  I have the brief here in

14 front of me, but I know that the court does as well, and I

15 don't want to waste the court's time unless you want me to read

16 the citations into the record.  We've listed several cases, and

17 there are many others that we didn't list in the interest of

18 economy.

19         Fourthly -- and that is the primary issue that I

20 intend to address here now because I feel like it's the real

21 question before the court.  Under what circumstances does the

22 jury trial demand of the State weigh in favor of transfer

23 versus those other circumstances in which a jury trial demand

24 may weigh against or in favor of the transfer?

25         So what we did in our brief -- and we -- I hope that

1    it's helpful for the court -- is analyze every single case

2    cited by the defendants as well as the cases cited by us so

3    that the court could accumulate them and then begin to see the

4    factors, the actual factual matters that come into play in the

5    determination on a motion to transfer.

6          Now, before we get into that, what I do believe is

7    important, essential actually for the court to understand are

8    two things because they guide the weighing of factors as to

9    whether you're going to place a checkmark in the defendants'

10   column or a checkmark in the plaintiff's.

11         Number one, the burden of proof.  The burden of proof

12   here is that the defendants as the movants must come forward

13   with a preponderance of evidence, not argument, evidence, to

14   illustrate that any particular factor weighs in their favor.

15         Number two, any factor that comes out as neutral

16   weighs against transfer.  We cited for the court the *Caremark*

17   case which itself cites the *Enron* case for that principle.

18   There is no case law cited by them.  And, to wit, I will -- and

19   to that end I will tell the court there is no such case law.

20   Neutral factors weigh against transfer.

21         Moving to the test itself, we've heard much ado about

22   the presumption, the home court presumption, in our earlier

23   hearing and here.  In fact, today, to paraphrase, I believe

24   what I heard is that it weighs so heavily in this case in favor

25   of transfer that the other factors become less important.

1          To that end, we have cited in our briefs and have

2     brought for the court three cases.  The *Capmark* case, the

3     *Mirant Corporation* case, and the *Northwest Airlines Corporation*

4     case, each of which stand for the following preposition --

5     preposition -- proposition.  When a chapter 11 plan has already

6     been confirmed, the presumption is destroyed or substantially

7     weakened.

8          The number one distinguishing point between every case

9     that you have seen the defendant cite above all other is that

10    every single one of those cases involved estates that were

11    continuing to be administered.  There was no plan confirmed.

12    In fact, they cited only one case in the entirety of their

13    briefing in which there was a confirmed chapter 11 plan.

14         And in that case it was a legal malpractice case in

15    which the debtor claims its lawyers committed malpractice in

16    drafting the plan.  And the court said because of the

17    bankruptcy court's familiarity with what happened in the

18    drafting of the plan and the activity of those lawyers before

19    that court and given that that is the very circumstance at

20    issue in that case, it's transferred.

21         So before I submit these cases, I want to show you

22    the -- or argue for you the two points that weigh heavily in

23    all these cases.  Number one, is there an open plan?  Here

24    there isn't.  Number two, is the subject matter of the suit at

25    hand, this suit, the State's fraud suit, the attorney general's

1    fraud suit, does it overlap with or is it duplicative of the

2    subject matter of any claim in the bankruptcy against the

3    debtor or, to the extent that it may apply, any adversary

4    proceedings that have previously been brought or transferred to

5    the bankruptcy court?

6            That's a common sense test because you don't want to

7    have issues of res judicata or collateral estoppel or just for

8    judicial economy sake two different judges weighing the same

9    facts, at least during pretrial proceedings.  That's the

10   circumstance that exists.

11           Neither one of those applies in this case.  We

12   submitted for the court as an exhibit the stipulation.  The

13   reason why KiOR brought an adversary proceeding against the MDA

14   was an effort to create a degree of relatedness.  It was forum

15   manipulation of the worst kind.

16           And because we as the MDA, not the state attorney

17   general who was not a party to that proceeding, brought a

18   contractual claim rooted in the MOU, the memorandum of

19   understanding, which we made as an exhibit for the court, we

20   stipulated that we would not contest the dischargeability of

21   the MDA's claim in the bankruptcy, rendering it, as it always

22   had been, contractual in nature.

23           The stipulation itself shows that there was no

24   adjudication of the merits and that this state court case

25   wasn't impacted in any way.  So when you see that we have a

1    confirmed plan, you have issues that have never -- factual or

2    legal, never been and never will be considered by the

3    bankruptcy court, the cases in which the defendants cite simply

4    don't apply.  If I may approach, I'll submit the authority.

5        (DOCUMENT TENDERED TO THE COURT)

6        MR. QUIN:  Before moving to the test itself, there is

7    a fourth factor in addition to the confirmation of the plan,

8    that the case doesn't involve activities that occurred in the

9    bankruptcy court, or that there's no issue of operative fact

10   before the court presently.

11       The fourth factor that distinguishes that case from

12   the authority the defendants cited you, Delaware has no

13   connection to any facts in this case.  None of the operative

14   activities occurred here.  None of the defendants' actual

15   residence is in Delaware.  The only connection Delaware could

16   even possibly claim to this is that there are a handful of

17   LLC's that are Delaware corporations.  That's it.  Nothing else

18   happened there.

19       Contrast that with Mississippi.  This is a fraud case.

20   The misrepresentations, the reliance on the misrepresentations,

21   the causation and the damages all occurred in Mississippi.  One

22   of the core facts in this case, the construction and brief

23   operation of the facility, the only commercial-scale facility

24   that KiOR ever had, was in Columbus.

25       Mississippi has a substantial connection to this, not

1   to mention that the measure of damages here are the public

2   funds that were wrongfully tendered as a result of the fraud,

3   state funds.  Yet another connection for Mississippi.  No

4   connection for Delaware.

5          Moving to the transfer factors themselves, the first

6   one is the economic and the efficient administration of the

7   bankruptcy estate.  It is this factor in which the presumption

8   that the defendants speak of apply.

9          Well, here the estate has been administered, and there

10  is no presumption as the authority we just submitted to the

11  court instructs.  So the first factor weighs against transfer.

12         Secondly, judicial economy, whether the interest of

13  judicial economy would be served by the transfer.  We've

14  discussed the first subpoint under that.  The stipulation that

15  we entered into is evidence in and of itself that the

16  bankruptcy court has never and will never consider the issues

17  in this case.  To the contrary, as the stipulation shows, it --

18  it itself -- it says that it is not an adjudication of the

19  merits and the merits had never been and never would be

20  considered.

21         Secondly, attempting to bring or bringing the

22  adversary proceeding in the bankruptcy court between KiOR, who

23  was not a defendant in our suit, a suit between nondebtors, as

24  a means of having the issues and facts of this case adjudicated

25  in the bankruptcy court where we cannot obtain a jury trial is

1   evidence in and of itself of forum manipulation.

2           The second component of that is the removal and

3   attempt to transfer this case that doesn't meet any of the

4   factors, not a single one.  Thirdly, the bankruptcy judge's

5   inability to preside over a jury trial.

6           Now, it is true that the bankruptcy judge under the

7   procedures that exist in our federal courts could preside over

8   pretrial and then refer the case to a district court for trial,

9   but that's not the issue.  The issue is whether under the

10  particular facts and circumstances in this case it should.

11          If we're talking about judicial economy, judicial

12  economy is destroyed in the sense that the very judge that they

13  claim has all of the knowledge and afforded that knowledge was

14  to preside over pretrial would not be presiding over trial.

15  You'd have a brand-new judge altogether.  So whatever

16  institutional or built-in sort of knowledge that he obtained

17  during pretrial or that they claim he may have now vanishes at

18  trial.  That does not weigh in favor of judicial economy.

19          Fourthly, the bankruptcy judge's inability to render a

20  binding decision during pretrial on the various motions that

21  are going to come forward means that you have an additional

22  layer of judicial review.  Right?  We go to the district court

23  on an additional layer of appeal that doesn't exist in Hinds

24  County Circuit Court.  You've got one judge.  You argue your

25  motion.  You move on.  That is less economical.

1    Finally, this case does not present issues of
2  res judicata, collateral estoppel, and there are no overlapping
3  or duplicative issues of facts of law with regard to the issues
4  in this case versus the issues that have ever been or ever will
5  be before the bankruptcy court.
6      The next factor is whether the parties would be able
7  to receive a fair trial in each of the possible venues.  What
8  I'd like to focus on in this factor is the burden of proof.
9  Certainly, we're not here claiming that a district court in
10  Delaware is fundamentally unfair to us.  Nor are we here
11  claiming that a bankruptcy judge, Judge Sontchi in Delaware, is
12  fundamentally unfair to the state attorney general.  But that's
13  not the question.
14      See, it's their burden to show that Delaware is more
15  fair, because we get to choose our forum.  And as the case law
16  we've cited is if the factor's neutral, then it weighs in favor
17  of denying transfer, not granting it.
18      The next factor is whether either forum has an
19  interest in having the controversy decided within its borders.
20  Certainly, a legitimate argument cannot be made that Delaware
21  has a greater interest in having this case decided there than
22  Mississippi does in deciding this case here.  That factor
23  weighs against transfer.
24      The next factor, the enforceability of any judgment
25  would be affected by a transfer.  An enforceable judgment can

```
 1   be rendered in Hinds County or in the Delaware district court,
 2   rendering the factor neutral, and neutral factors weigh against
 3   transfer.
 4          Finally, should the plaintiff's original choice of
 5   forum be disturbed.  We cited a United States Supreme Court
 6   case, quoted from it, in fact, in our brief, that stands for
 7   the following proposition.  In cases of unique local interest,
 8   such as defrauding the State of Mississippi of tens of millions
 9   of dollars, that a local jury, that the citizens of the state,
10   have a very strong interest in having a jury within that state
11   preside over the case so that it is heard within its borders
12   and they just don't have to read about it in the newspapers but
13   they can, in fact, see it firsthand.  This sixth factor weighs
14   heavily in favor of the State.
15          So then if you review the factors, the first factor
16   weighs against transfer because there is no presumption in this
17   case due to the confirmation of the plan.  Judicial economy
18   weighs in favor of the State precisely because no pretrial
19   decision would have to be -- would be binding, adding an
20   additional layer of review, because whatever -- whatever
21   knowledge that the bankruptcy judge gained during pretrial
22   matters would be lost at trial, and the other factors that we
23   discussed.
24          Whether we'd be able to receive a fair trial:  We
25   don't contend that Delaware would not be a fair forum.  What we
```

1  do contend is that it's no more fair; and that being neutral,

2  that weighs in favor of denying transfer.

3           Reviewing the fourth factor again, whether Mississippi

4  or Delaware has a greater interest of having the controversy

5  decided within its borders, there's no point to belabor that.

6  Certainly Mississippi has a greater interest than Delaware.

7  The enforceability of any judgment affected, it's neutral

8  because the judgments of both courts would be enforceable if

9  you're assuming bankruptcy court is not the trial court.

10          And the plaintiff's original choice of forum, that

11  certainly weighs in favor of Mississippi as well because a

12  Mississippi jury and the citizens of this state have a much

13  greater interest in having a trial here than does those of

14  Delaware.

15          A second approach that this court can consider -- and

16  it was not addressed by the defendants in their brief, but it

17  is a legitimate one.  It, in fact, occurred in a Louisiana case

18  that we cited in ours -- is if abstention -- and I don't intend

19  to belabor the abstention argument unless the court wants to

20  hear the abstention argument again.

21          If the abstention factors, enough of them -- and

22  enough of them have been defined by the Fifth Circuit.  It's

23  just three out of four of mandatory abstention factors, and we

24  clearly meet that here -- or enough of the permissive

25  abstention -- and the Fifth Circuit said even one of those is

1    enough -- but we meet virtually, as we set forth in our prior

2    argument, all of those as well -- if the abstention factors

3    weigh in favor of this court just remanding, then another

4    approach is to just remand and moot the transfer motion

5    altogether.

6            Now, the Louisiana court did just that.  A case was

7    removed, it was sent -- it was -- a motion to transfer was

8    filed seeking to have it transferred to the home court

9    bankruptcy.  The Louisiana court found permissive abstention

10   and sent it back.

11           Another case in that regard that I think the court

12   would find particularly obstruction -- instructive is a

13   Mississippi case.  It's *In re:  Trimjoist Corporation.*  And the

14   cite is 2013 Bankr., Bankruptcy, LEXIS 3080.  It's a July 30,

15   2013, decision from the Bankruptcy Court of the Northern

16   District.

17           In that case the court was confronted with -- and,

18   again, I'm not going to belabor the factors unless the court

19   would like me to or to get even further in depth into the

20   decision, but the issue before the court was whether mandatory

21   abstention or permissive abstention should apply.  And as

22   argued by the defendants and we've rebutted it, three of the

23   four factors applied and there was a question over whether the

24   fourth one did.

25           And what the bankruptcy court did is it decided to

1   simply moot the permiss- -- mandatory abstention argument and

2   to permissively abstain because, in fact, three of the four

3   factors had been met as well as other permissive abstention

4   factors.

5            We would argue that's precisely what the court should

6   do here.  It should abstain, it should remand, it should moot

7   the transfer motion because that is the most economical and

8   efficient handling of the case.

9            Finally, I asked Will Bardwell, my associate, to do a

10  very pointed research project for me in advance of our last

11  hearing.  And the reason why I bring this up on the abstention

12  factors is because it also is going to weigh with regard to the

13  transfer motion as well.  So I'll start with the transfer

14  motion.

15           I would ask the court to ask the defendants this

16  question.  Show you a single case in which there is a confirmed

17  plan of reorganization and a dispute between nondebtors and in

18  which there is no claim pending in the bankruptcy court arising

19  from the same common nucleus of operative facts in which

20  transfer was granted.

21           We looked at all Feds across the whole country and we

22  couldn't find one.  But what we did find is transfer that met

23  the circumstances that I outlined earlier, none of which come

24  to play here.

25           With regard to abstention, I asked Mr. Bardwell on

1   permissive abstention to conduct a search in which you had

2   purely or predominantly state law issues, non-core claims, as

3   we do here admittedly, that fall in the "related to" bankruptcy

4   jurisdiction of the court involving confirmed plans.  He looked

5   within the Fifth Circuit, and he found the following cases in

6   which abstention was granted.

7           The *Firefighters' Retirement System* case, 2014 U.S.

8   Dist. LEXIS 98721.  *Towing and Recovery Professionals,* 2012

9   U.S. Dist. LEXIS 148414.  *Petroleum Engineers,* 2011 U.S. Dist.

10  LEXIS 152090.  *Patterson*, 337 B.R. 82.  JT Thorpe Company, 2003

11  U.S. Dist. LEXIS 26016.  And *Wrt Creditors,* 75 F.Supp.2d 596.

12          In all those cases the courts abstained and remanded.

13  No case that met the actual circumstances of this case,

14  non-core claims, state law, confirmed plan, no case denied

15  remand.  No case denied permissive abstention.

16          Mandatory abstention, we did a similar search and the

17  cases are extensive.  *Bates and Rogers Construction*

18  *Corporation*, 97 B.R. 905.  *In re Chiodo*, 88 B.R. 780.  *McKee*,

19  1999 U.S. Dist. LEXIS 8735.  *City of Harvard*, 1990 U.S. Dist.

20  LEXIS 19136.  *Raven II Holdings,* 367 B.R. 786.  *Fitzgeralds*

21  *Sugar Creek,* 261 B.R. 1.  *Personette*, 204 B.R. 764.  These are

22  all cases that applied mandatory abstention that were filed in

23  state court initially after the filing of a bankruptcy petition

24  and then were removed and remanded.

25          Now, respectfully, certainly the court can dig into

 1   the mandatory abstention factors and reach a finding if it so

 2   chooses.  What I would argue is that the more expeditious and

 3   perhaps best approach is to simply apply permissive abstention,

 4   not dig into whether the requirement as to whether a suit must

 5   be filed before there's a bankruptcy petition or not, just as

 6   the Northern District Bankruptcy Court did, and to apply

 7   mandatory -- apply permissive abstention and not dig into the

 8   mandatory abstention factors.

 9        Moving to the convenience of the parties' factors and

10   the final thing that I'll discuss now before the court's

11   questions, the second component of the 1412 analysis is whether

12   transfer would be in favor of convenience of the parties.  And

13   the four factors which we agree as listed by counsel are the

14   ease of access to sources of proof.

15        As we discussed in our earlier hearing, the sources of

16   proof in this case are depositions and documents, as they are

17   in most cases.  Documents are produced digitally, as they have

18   been -- some of them have been in the bankruptcy on different

19   matters.  And that those same documents may also be evidence in

20   support of our claims in this case is great, but the point is

21   that they're digitally produced.  So the ease of access to

22   sources of proof is neutral with respect to document

23   production.

24        With respect to depositions, no defendant is a

25   resident of Delaware.  Whether this case proceeds in Hinds

1   County circuit court or this court or Delaware, in either of

2   the courts, travel to witnesses in California or Texas is going

3   to be necessary.  So at worst that factor is neutral and

4   neutral favors weigh against transfer.

5           Number two, the location of assets.  I won't belabor

6   that point because counsel has admitted that that factor too is

7   neutral.  Neutral factors weigh against transfer.

8           Availability of compulsory process.  The two points

9   that I would make is, number one, party of defendants -- you

10  don't need compulsory process for parties.  So it's moot as to

11  them.  As to third-party witnesses, as I am sure the court is

12  well aware, letters rogatory are used all the time.

13          Number four, location of parties and witnesses, again,

14  none of the defendants are Delaware residents, neither

15  corporate nor individual.  And as far as nonparty witnesses, a

16  special point was made with regard to Governor Barbour and Gray

17  Swoope, the former executive director of the MDA.  I simply

18  would note this, as the court may be aware from *The*

19  *Clarion-Ledger* article, both of them are partners in Butler,

20  Snow, about two blocks from my office, in an economic

21  development venture now.

22          While Mr. Swoope may travel to Florida and

23  Governor Barbour certainly may travel to D.C., I am quite

24  comfortable that we'll be able to obtain, if not voluntary

25  appearances at depositions, certainly, compulsory process over

1    them.

2         And that concludes my presentation.  If the court has

3    any questions, as I'm here, I'd be happy to answer them.

4         THE COURT:  No.  Thank you much.

5         MR. QUIN:  Thank you.

6         THE COURT:  Court will take a ten-minute recess.

7      (RECESS)

8         THE COURT:  You may be seated.  Now, then, rebuttal.

9         MR. BRABEC:  Your Honor, I'm going to take these kind

10   of in reverse order.  But I was a little taken aback by

11   Mr. Quin's statement during argument that we had argued the

12   abstention issues, because that was not our understanding.  It

13   was our understanding from the beginning that the court wanted

14   to hear arguments on the -- on the transfer motion only.  And

15   so I would like the record clear that we have not argued the

16   abstention issues.  While they may have been mentioned, they

17   certainly were not argued.

18        But I think that one thing that the court needs to

19   remember -- and it's a key point -- when we consider how the

20   claims overlap, it's not the law that has to overlap.  It's the

21   facts.  And the bankruptcy court has been involved with the

22   facts from the beginning.  As Mr. Quin said a week ago

23   Thursday, there have been hundreds of thousands of documents

24   that were produced in the bankruptcy, that there have been --

25   there have been over 12 depositions taken in the bankruptcy,

1    all at the request of the State and MDA.

2          The State and MDA have been actively involved in the

3    bankruptcy from the beginning and -- but now they don't want

4    it -- want the case transferred because they want to go to

5    their chosen forum, hopefully, as they see it, in circuit court

6    in Hinds County.

7          Your Honor, I want to make something very clear.  In

8    their response, there is not a single case that states the

9    issue of whether a jury trial would be available is the

10   controlling factor.  It may be one of many factors but not the

11   controlling factor.

12         Now, the presumption, your Honor, is applicable.

13   This -- the home court presumption is exactly what it is, a

14   presumption.  We meet the burden of proof with the presumption,

15   but we do -- did far beyond that.

16         Now, Mr. Quin stated that we had the burden to prove

17   that the Delaware court is more fair than a Mississippi court.

18   Your Honor, with all due respect, that's just not true.

19   Nowhere in any of these cases is there a statement that says

20   that the moving party has the burden that it would -- to show

21   that the transferee court would be fairer than the transferor

22   court.

23         And, your Honor, I wanted to talk about some of these

24   cases that were relied upon by the MDA.

25         THE COURT:  So what's your view about this fairness

 1   issue then?

 2          MR. BRABEC:  The issue of fairness?

 3          THE COURT:  When you make a distinction between the

 4   transferee court and transferor court, then how do you say that

 5   factor weighs out?

 6          MR. BRABEC:  I believe -- we believe that it's a

 7   neutral factor, but I disagree with Mr. Quin.  He says that a

 8   neutral factor is an against factor.  No.  A neutral factor is

 9   a neutral factor.

10          The court is not required to make a finding on each

11   factor.  Only one factor can apply and overweigh the other

12   factors.  So it's not whether you win five of six or whether

13   you win, you know, three and a half of six, it's which is the

14   strongest.  And we believe that a combination of the home court

15   presumption with the interrelatedness of the -- and the effect

16   on the bankruptcy that is most important.

17          Now, your Honor, the *Capmark* case is one that was

18   cited by the plaintiffs.  And the *Capmark* case is not a case

19   that was based on whether a jury trial was requested.  That was

20   a factor.  But what was -- that case was decided on the

21   judicial economy factor, which is one of the six factors I

22   discussed.

23          But the thing that was so important about this

24   particular case, your Honor, that distinguishes it from our

25   case is this.  The state court suit in *Capmark* was filed not

1  only after the debtor had its plan confirmed, but it was filed

2  after the debtor had emerged from bankruptcy completely.

3  That's completely different from what we have here.

4         What we've got is a plan that's been approved, but

5  we've got the bankruptcy court specifically reserving

6  jurisdiction to hear disputes.  So the *Capmark* case is

7  completely distinguishable on that point in and of itself.

8         But also, your Honor, *Capmark* makes a good point in

9  favor of transfer here.  At page ten of the *Capmark* decision,

10  the court stated, "Where a bankruptcy proceeding involves a,

11  quote, substantial learning curve, transfer pursuant to

12  28 U.S.C. 1412 is appropriate."

13         Your Honor, we submit that this case would involve a

14  substantial learning curve.  As Mr. Quin stated during our last

15  hearing, the -- the various motions and positions that have

16  been taken by the various parties, by the debtor, by the State,

17  by the MDA, are so interrelated with this claim.  The only

18  difference between this claim and what was going on in the

19  bankruptcy court is the fact that they sued the investors and

20  the officers and directors of the company instead of the

21  company itself, but all of the facts are the same.

22         They benefited from extensive discovery on that issue,

23  got hundreds of thousands of documents, got numerous

24  depositions, including the one that I showed the court earlier,

25  through bankruptcy.  And now they're saying it's just not fair

1    for them to have to be in bankruptcy court.  Well, your Honor,

2    I disagree and I think the case law also disagrees with them.

3            THE COURT:  So you disagree with opposite counsel's

4    assessment that where a factor is neutral that that is a factor

5    then that weighs against transfer.

6            MR. BRABEC:  I disagree.  Your Honor, neutral, while

7    it doesn't support a transfer, it doesn't weigh against a fact.

8    If we had no other proof and everything was neutral, then I

9    would agree that we have not met our burden.

10           But we have met our burden here on several of the

11   factors, not the least of which is the home court presumption,

12   which, as the court knows, a presumption is a presumption which

13   meets the burden -- which is going to meet the burden of proof.

14   We don't have to put on any specific proof to meet that.  And

15   we have that presumption.  We also have the very first factor

16   and a number of the other factors as I went through before.

17           Now, if it's neutral, it doesn't help the transfer;

18   but it doesn't mean that you've got to prove every one of the

19   factors in order to get a transfer.  The court just weighs

20   which factors in the court's opinion is most -- would be most

21   important.

22           THE COURT:  I believe he cited a case in support of

23   that.

24           MR. BRABEC:  Well, your Honor, I disagree.  We've got

25   factors -- there may have been some courts that have held that.

```
 1   I am unaware of that.  And I would have to -- I'm not going
 2   to -- I'm not going to say that they don't have cases from some
 3   district, but I know there's no controlling law that says that
 4   in the Fifth Circuit.  I know that for a fact.  There may be
 5   something in New York or there may be something in -- somewhere
 6   else.  But, your Honor, that's why you have -- you have one in
 7   favor, you have one against and you have one that's neutral.
 8            Now, the case law is very clear that you don't have to
 9   prove all six elements of the interest of justice in order to
10   get it transferred.  The preponderance of the evidence of the
11   factors and, you know, what -- you could only -- you can prove
12   it with one factor, you can prove it with two factors, you can
13   prove it with all six factors, but you don't have to prove it
14   with all six factors.
15            THE COURT:  Now, this presumption upon which you
16   rely --
17            MR. BRABEC:  Yes, your Honor.
18            THE COURT:  -- how is it compromised, if at all, by
19   the disappearance of an estate?
20            MR. BRABEC:  Pardon me, your Honor?
21            THE COURT:  How is it affected by the disappearance of
22   an estate?
23            MR. BRABEC:  Well, the estate hasn't disappeared, your
24   Honor.
25            THE COURT:  So you disagree with the other side.
```

1          MR. BRABEC:  We disagree that the -- I mean, the plan

2     has been approved, yes.

3          THE COURT:  Okay.

4          MR. BRABEC:  The estate is still there.

5          THE COURT:  Well, then --

6          MR. BRABEC:  And until the -- until the debtor comes

7     out -- works out of bankruptcy, it's still there.  And we -- as

8     I stated a few moments ago, the *Capmark* decision, your Honor,

9     showed that it was when they emerged from bankruptcy they've

10    lost that presumption.  We understand that.  They haven't

11    emerged from bankruptcy yet.

12         THE COURT:  Okay.  Go ahead with your argument.

13         MR. BRABEC:  All right.  Now, your Honor, we're not

14    going to argue the issues on remand.  The court didn't want

15    those -- that argument at that time.  It's not necessary for

16    the court to consider that issue until the court finds on

17    whether it's -- the case is going to be transferred or not.

18    And it's an appropriate consideration for the transferee court

19    if that's what the court finds; and if not, it's for the court

20    to decide at a later time.

21         But we don't think that the issue of abstention has

22    any effect whatsoever on whether there's a transfer.  Now,

23    certainly, some courts have conflated the two, but that's not

24    the proper procedure.  The proper procedure is to make a

25    decision on transfer and then -- then consider the issue of

1    remand.

2            But I do want to make it clear, again, we have not

3    argued on remand.  We believe we've got meritorious arguments

4    against remand.  But because the court has told us to deal with

5    the transfer issue first, that's what we've done.

6            Thank you, your Honor.

7            THE COURT:  All right.  Thank you.  Mr. Minor, you

8    said that you wanted an opportunity to distinguish some of the

9    cases.

10           MR. MINOR:  Yes, your Honor, and make just one -- a

11   couple of other points in response to the questions that your

12   Honor asked or issues that came up in the prior argument.

13           First of all, your Honor, I want to address this whole

14   issue of the plan being over with, that the bankruptcy is over.

15   I don't recall Mr. Quin's exact words, but he certainly tried

16   to suggest to the court that we're now here in a situation

17   where the bankruptcy proceeding has ceased to be an ongoing and

18   viable proceeding.

19           And as you may recall from my argument before you last

20   time, I referenced the actual language of the order.  And I

21   think it's important in response to the State's position to

22   point out the scope of jurisdiction that the bankruptcy judge

23   has expressly stated it has retained following the confirmation

24   of the plan.

25           Your Honor, that court stated that it shall retain

1   jurisdiction over all matters arising out of and related to the

2   chapter 11 case and the plan to the fullest extent permitted by

3   law including, without limitation, jurisdiction to allow,

4   disallow, determine, liquidate, classify, estimate or establish

5   priority -- I'm going to summarize a little bit, your Honor --

6   grant or deny any applications for allowance of professional

7   fee claims, resolve any matters related to the assumption --

8   assumption and assignment and rejection of any executory

9   contract or unexpired lease, ensure that distributions to

10  holders of allowed claims are accomplished pursuant to the

11  provisions of the plan.

12          And perhaps most importantly, your Honor, the

13  bankruptcy court retains jurisdiction to decide or resolve any

14  motions, adversary proceedings, contested or litigated matters

15  and any other matters, included all vested causes of action and

16  objections or estimations to claims or equity interests and

17  grant or deny any applications involving the debtor that may be

18  pending on the effective date or that pursuant to the plan may

19  be instituted by the liquidating trustee or any other person or

20  entity after the effective date, provided, however, that the

21  liquidating trustee and the liquidating trust shall reserve the

22  right to prosecute the vested causes of action.

23          So, your Honor, the plan has been confirmed.  That's a

24  true statement.  However, this bankruptcy proceeding is not

25  closed.  The bankruptcy court has retained jurisdiction, and

```
1    the State has conceded that there is "related to" jurisdiction

2    in this particular matter.

3            Your Honor, just to step back, a lot of the argument

4    that you've heard has been very technical and there are a lot

5    of factors.  And there are all good lawyers in this room; and

6    we all know when you have a four-prong or six-prong or

7    eight-prong test, you can spend enough time on Westlaw and you

8    can find out a case that comes out one way or the other in

9    favor of the position that you're trying to take at that time.

10   And you can certainly -- by aggregating a lot of cases, you can

11   frequently, rather, make the argument that your position is

12   supported by case law.

13           But, your Honor, I think it's important to step back

14   here and just sort of make this much more simple.  The State

15   went to the bankruptcy proceeding and they tried to get money.

16   When they couldn't get money there, now they're trying to get

17   money here.  There is a relationship between the bankruptcy

18   proceeding and this action that's that simple.

19           And the argument to you today is this is so completely

20   different, this is so totally different, it has nothing to do

21   with it.  And, your Honor, that's simply not true.  It was

22   evidenced by the visual aid Mr. Brabec brought here.

23           And I want to point out to the court that there are

24   four other defendants in this lawsuit who have been deposed.  I

25   don't know if the depositions are as thick as that, but that I
```

1  believe is some indication that there was an extensive

2  examination of the parties in this matter in the course of the

3  bankruptcy proceeding.

4          Your Honor, the State's argument attempts to gloss

5  over the extent to which they were involved in that proceeding.

6  As I said to you before, they have submitted a claim in that

7  proceeding.  They have been extensively involved in that

8  proceeding.  They filed over 60 documents in that proceeding.

9          None of these cases that they're citing to you in

10  their brief -- and I have all four of them right here in front

11  of me -- none of them involve an entity that has submitted a

12  claim in the bankruptcy proceeding that they are resisting --

13  to which they're resisting transfer of the case.  There is a

14  much more intimate relationship between the State and the

15  bankruptcy proceeding and this particular dispute than in any

16  of the four cases that they mention.

17          Your Honor, a lot of what they say is about remand.

18  And as Mr. Brabec said a few moments ago, to the extent those

19  are good arguments or bad arguments, the judge in Delaware will

20  be able to make that determination; and I'm not rising to

21  respond to those arguments.  I believe that the State's

22  entitled to make those arguments.  I, however, encourage the

23  court, as I suggested in my previous remarks, to allow the

24  court that has the more intimate knowledge of this dispute to

25  make that decision.

1              Your Honor, just I want to also point out for the

2    record in response to the State's attempts to put so much

3    distance between this dispute and that one, Mr. Brabec pointed

4    out that the MOU was submitted and filed in the bankruptcy

5    court.  That certainly is a development that is not found in

6    any of these other cases.  In this case the State filed a

7    motion to pursue a claim derivatively on behalf of the debtor,

8    they filed a motion to convert it to a chapter 7, and they

9    filed a motion objecting to the reorganization.

10             The reason why we believe, your Honor, that transfer

11   is appropriate is because there is a judge who since November

12   of last year has presided over the case in which the State's

13   filed 60 documents, has presided over the case in which

14   defendants have been examined at various hearings, has had

15   documents attaching deposition testimony submitted to the

16   court, heard witnesses.

17             It simply makes sense, your Honor.  Despite you having

18   the resources to gain the information that the court has, it's

19   not necessary for you to do so.  And we believe that the

20   transfer should be made to the court so that that court can

21   make that decision.

22             Your Honor, as I said a few moments ago when I was

23   talking about the cases that I wanted to distinguish,

24   Mr. Brabec mentioned the *Capmark* case.  And I'm not going to

25   repeat what he said; but as he indicated, it's distinguishable.

1           Two of the other three cases that are referenced --

2   and, your Honor, I'm responding to the cases that they included

3   in their brief.  I'm obviously not in a position to address

4   several of the authorities that they mentioned in their

5   argument.  But they rely on four cases in opposition of

6   transfer.  The *Capmark* case, as Mr. Brabec said, is

7   distinguishable and even has language in it with respect to the

8   substantial learning curve, which we believe affirms our

9   position.

10          The *Marrone* case, which is the second case.  The

11  primary distinguishing characteristic there is -- it is the

12  reverse of what we have here.  The bankruptcy proceeding was

13  filed after the lawsuit.  In fact, the motion to transfer was

14  filed four years after the lawsuit was filed.

15          Well, your Honor, that very obviously presents a very

16  different situation.  Here the bankruptcy proceeding was filed

17  first, and there it was filed afterwards.  But not only that,

18  it was filed -- the motion to transfer was filed four years

19  after the state court action -- excuse me -- it was four and a

20  half years after the state court action, and then it was filed

21  four years after the bankruptcy action.

22          It's distinguishable because the bankruptcy was filed

23  afterwards.  And we referenced that in our brief, and we

24  believe that that's an important factor for the reasons set

25  forth in our brief.  That case also was distinguishable because

1    the court went out of its way to talk about how virtually all

2    of the documents and witnesses were in New York.  And we

3    certainly don't have a situation where virtually all of the

4    documents or witnesses exist in any particular place, as

5    Mr. Brabec said earlier.

6            The third case that they reference, the *Cytodyn* case,

7    is clearly distinguishable because that case involved a motion

8    to transfer that was filed a week before trial.  So the lawsuit

9    had been pending, trial's about to come, and then the litigants

10   decide that they want to try to go to bankruptcy court.  In

11   that case the judge used the phrase "highly bad faith attempt"

12   in describing the filing of that motion to transfer.

13           We clearly don't have that situation here.  Once

14   again, here the bankruptcy proceeding predated the filing of

15   the lawsuit.  So both *Marrone* and *Cytodyn* chronologically are

16   inconsistent with the situation that we have here, and there's

17   certainly no evidence of any bad faith attempt.  We couldn't

18   have in bad faith attempted to do that, your Honor, because the

19   bankruptcy proceeding was filed -- was filed before we knew

20   that the state court was going to file a proceeding and was

21   certainly filed before the proceeding was filed.

22           Lastly, your Honor, the *Luciano* case, the fourth of

23   the four cases that they relied on, is clearly distinguishable

24   because it involved a sexual harassment suit against the

25   officer of the company that was in a bankruptcy proceeding.

1    That is all the way to one end of the spectrum as far as having

2    a relationship to the bankruptcy proceeding.

3           We're all the way over here on the end of the State's

4    filed the claim there, the State has taken the agreement that

5    serves as the basis for the claim, this MOU they alleged to

6    have fraudulently been -- they were induced fraudulently into

7    signing.  That document is a part of the record in the

8    bankruptcy proceeding.  They've made a claim in the bankruptcy

9    proceeding, they've litigated in the bankruptcy proceeding,

10   they sought money in the bankruptcy proceeding, all on the

11   basis of the MOU which is attached to the complaint in this

12   particular proceeding.

13          So the notion that you, your Honor, should be making a

14   decision on remand as they're arguing when that -- this case

15   has been so extensively litigated and they have such

16   involvement in it and have sought to use it both for purposes

17   of obtaining money and also apparently for obtaining

18   information as based on the length of this particular

19   deposition, we believe that all of those factors are in clear

20   contrast to the four cases that they are relying on in their

21   brief and are certainly inconsistent with the particular facts

22   before the case in the -- before the court in this particular

23   case.

24          So, your Honor, for all these reasons, we believe that

25   the State certainly is entitled to have the motion to remand

1  heard.  They're entitled to file it in the transferee court.

2  Upon transfer, they're entitled to make all of the same

3  arguments.  We'll have the same burden in response to that.

4  And the fact that the case is going to be transferred is not

5  going to prejudice them in any way.

6       You asked for a brief on the jury trial issue.  We

7  briefed it for your Honor.  We showed that there's no prejudice

8  to them with respect to the jury trial because they will still

9  get one.  So now we're here arguing about whether or not the

10  case should be remanded.  And they're certainly not prejudiced

11  when they have the opportunity to make that argument before the

12  court that has most of the information about this particular

13  proceeding.  Thank you, your Honor.

14       THE COURT:  All right.  Thank you.  I know it's their

15  motion and they should get the last word; but inasmuch as

16  Mr. Minor has sought to distinguish some of your cases, I want

17  to hear your response to that.

18       MR. QUIN:  The first point that Mr. Minor made with

19  respect -- was with respect to the jurisdiction retained in the

20  plan.  That's the federal question jurisdiction, the

21  "related to" bankruptcy jurisdiction.

22       We've conceded that here, although we have

23  acknowledged -- and will say again as we did in our earlier

24  hearing -- that the connection is very, very tenuous in light

25  of the confirmation of the plan and the other things that we

1   have discussed.  And that is the *Capmark* case.

2          The second point that was made with respect to the

3   *Capmark* case and both Mr. Minor and I believe Mr. Brabec

4   discussed is the suggestion that *Capmark* doesn't speak of

5   confirmation.  It speaks of emergence from bankruptcy.  The

6   court need look no further than the language of *Capmark* itself,

7   and I'll just read it.

8          "As a general matter, the district in which the

9   underlying bankruptcy case is pending is presumed to be the

10  appropriate district for hearing a determination of a

11  proceeding in bankruptcy.  However, it must be noted that after

12  a plan has been confirmed by the bankruptcy court, any

13  presumption in favor of maintaining venue before the bankruptcy

14  court is substantially weakened."

15         It speaks of confirmation of the plan and then it

16  cites to the *Northwest Airlines Corporation* case, 384 B.R. 51,

17  and the *Mirant Corporation* case, 337 B.R. 107 at 124, and it

18  quotes from it.  And the quote from it that the *Capmark* case

19  provided, open quote, Any such presumption in favor of

20  retaining venue of the bankruptcy case in this case has been

21  significantly weakened, if not entirely destroyed, by the

22  circumstance that this is now post-confirmation litigation.

23  The issue is confirmation.  The plan has been confirmed.

24         With respect to the *Marrone* case, the reason why --

25  and more generally before I dig into the *Marrone* case, the

1    reason why we cited *Capmark*, *Marrone*, *Cytodyn*, and *Luciano*

2    varied case by case.  What we were trying to do is collect for

3    the court cases in which certain factors in addition to the

4    jury trial demand tend to weigh along with that jury trial

5    demand in favor of denying transfer.  So in each of these cases

6    you have a jury trial demand plus something else.

7           In *Capmark* it was the fact that there was no

8    presumption, contrary to the arguments of counsel here, plus

9    the jury trial demand, plus the fact that the bankruptcy court

10   had never considered any of the issues in the case in which

11   transfer was sought.  There were no issues of collateral

12   estoppel, res judicata, and there were no issues of duplicative

13   or overlapping jurisdiction.

14          On *Capmark*, I was discussing with my counsel before

15   your Honor had come back into the courtroom that if I was

16   allowed a surrebuttal what would be my ten-second-or-less

17   argument and it is this.  Perhaps the most important point for

18   the court at this stage to recall is the defendants as the

19   movants bear the burden of proof; and they must do that with

20   evidence, not with argument.

21          I hope it is not lost on the court that among the

22   counsel arguing, I'm the only one who was present in the

23   bankruptcy case.  And I am telling you as an officer of this

24   court, aware of all of the penalties of perjury, the issues in

25   our case, the factual issues as well as legal ones, were not

1    ever before the bankruptcy court.  And if the defendants claim

2    otherwise, it is as a matter of law impermissible for them to

3    try to meet their burden with argument by simply saying it's

4    the same.  They must show it.  And they haven't.

5         I can tell you again as an officer of this court, the

6    issues in the bankruptcy court were, number one, whether waiver

7    was ever going to be granted, whether nondebtors would be

8    allowed to have waivers of liability from the very liabilities

9    that are the sort in this suit.  They dropped that claim.

10        After that it was whether there was -- the plan was

11   feasible and whether the Khosla parties should be allowed to

12   have preference claims.  That was it.  That's what was at issue

13   in that case.  And if they want to claim otherwise, they have a

14   burden of proof.  And there is no evidence, just as in *Capmark*.

15        Now, it's true that the -- that in the *Marrone* case

16   that the order of things are as Mr. Minor set them forth.  But

17   the reason why transfer was denied wasn't because of the order

18   and the reason why we cited it wasn't because of the order.  It

19   was because of other things that are unassailable in this case

20   as well.

21        Number one -- I'm reading from the *Marrone* case -- the

22   plaintiff's choice of forum is generally accorded more

23   deference when it is a resident of the forum state.  That's

24   *Marrone* at page eight.  We're in Mississippi.  Obviously, the

25   attorney general is the state.  Not a resident, but one would

1    think the interest is just the same or stronger.  The

2    plaintiffs in *Marrone* were residents of New York, as the AG is

3    here of Mississippi.

4           The defendant's allegedly harmful conduct had an

5    effect on the plaintiffs in New York.  The harmful conduct in

6    our suit had an effect on the AG and the State of Mississippi

7    within the State of Mississippi.  The contract at issue in

8    *Marrone* was negotiated in New York.  The MOU was negotiated and

9    executed by the -- Gray Swoope of the MDA in Mississippi.

10          Numerous witnesses and all of the documents upon which

11   the plaintiff relied were located in New York.  That's true

12   here.  As they've mentioned, we already have digitally produced

13   documents that were produced in the bankruptcy on other issues.

14   Here in Mississippi the digital production of documents will

15   continue in this suit.

16          I would cite for the court the *It's a 10, Inc.* case,

17   718 F.Supp.2d at 332.  The quote is, "In today's era of

18   photocopying, fax machines and Federal Express, the location of

19   documents is not a significant factor in the convenience

20   analysis."

21          Numerous witnesses:  The MDA is here.  Mr. Swoope and

22   Governor Barbour despite their claims to the contrary will be

23   here as well as many other witnesses that are in Mississippi

24   that will testify and I believe in favor of our claims in this

25   suit.

1      There are other factors in the *Marrone* case.  The

2  movants failed to offer any evidence detailing why litigating

3  in Mississippi would be unduly burdensome.  Here we've heard no

4  evidence whatsoever, evidence, that litigating here for any of

5  these defendants would be more burdensome than litigating in

6  Delaware or anywhere else.  The claims in *Marrone* were

7  non-core.  The claims here are non-core.  And, finally, as I

8  mentioned earlier, no jury trial could be granted by the

9  bankruptcy court.  So it was a factor along with those other

10  factors.  That's why we cited *Marrone*.

11      In the *Cytodyn* case the court heavily relied on four

12  factors in denying transfer.  The witnesses, documents and

13  underlying events bore little relationship to the proposed

14  transferee forum.  Same here.  There is virtually no

15  relationship with Delaware between the witnesses, documents and

16  underlying events.

17      California law governed the claims.  Here, too,

18  Mississippi law governs the claims.  Many of the events

19  underlying the complaint, which was for fraud in the *Cytodyn*

20  case, occurred in California.  Here many of the events which

21  underlie our fraud case occurred in Mississippi.  And the

22  plaintiff could not obtain a jury trial in the bankruptcy case,

23  as is true here.

24      In *Luciano*, the district court denied the transfer

25  explaining two main reasons.  Number one, transfer -- and I

1    will quote -- would be far afield from the notion of judicial

2    economy, particularly in light of the fact that the bankruptcy

3    court would have to submit its findings of fact and conclusions

4    of law to this court for de novo review.  So too is the case

5    here.

6              Secondly, the district court noted that transfer would

7    be inefficient, open quote, because any fact finding here must

8    be by a jury sitting before an Article III judge.  So too here.

9    The bankruptcy court cannot grant a jury trial.

10             We cited those cases because each of those

11   circumstances that I just set forth in addition to the

12   bankruptcy court's inability to grant a jury trial was present.

13             I could go into other matters of rebutting the various

14   points raised.  The one that I most want to emphasize is that

15   they bear the burden of proof with evidence.  And, your Honor,

16   they've given you no evidence that there are duplicative claims

17   here, overlapping litigation, that there's any collateral

18   estoppel, res judicata or other issues presented in this case.

19             To the contrary, we have given you evidence.  We've

20   given you the stipulation that expressly says there's been no

21   adjudication of the merits of this case and that the

22   stipulation had no impact whatsoever on the claims in this

23   case, and that if they want to come forward and say there's

24   overlapping litigation and those various risks, they have a

25   burden of proving it.  They can't just argue it.

1          THE COURT:  All right.  Thank you.  Mr. Brabec.

2          MR. BRABEC:  Yes, your Honor.

3          THE COURT:  Your arguments are principally attacked on

4    this notion of evidence.  So I'll let you make a response to

5    that.

6          MR. BRABEC:  Yes, your Honor.  Mr. Quin in talking

7    about the *Capmark* case and he quoted the *Capmark* case talking

8    about whether the presumption would apply.  And, true, the

9    *Capmark* case did use the term "confirmation" in its statement.

10   However, that language was dicta.  And the reason it was dicta,

11   your Honor, is found on page two of the opinion.

12         On September 30th, 2011, *Capmark* emerged from

13   bankruptcy.  On October 24th, 2011, the plaintiffs commenced

14   the present action.  So, your Honor, this is a –- a

15   post-emergence case, not a post-confirmation case.  And any

16   language to the contrary in that case is merely dicta.

17         There is sufficient evidence, your Honor, before the

18   court in the form of the pleadings that have been filed from

19   the bankruptcy court, in the form of the concessions that were

20   made by Mr. Quin in argument concerning what happened in the

21   bankruptcy court, because he does have personal knowledge and

22   has, in effect, made himself a witness; but there is a

23   considerable amount that was done in that case by the State

24   relating to this MOU which was the crux of the entire

25   bankruptcy claim and it is the crux of this lawsuit.

 1          They took discovery on facts that relate to this

 2    lawsuit.  They obtained documents relating to this lawsuit.

 3    And for them to claim that it's unfair at this point in time to

 4    make them go back and let the bankruptcy court merely decide

 5    whether or not this case is appropriate in federal court is

 6    really pushing the envelope given the fact that they were so

 7    involved.

 8          As Mr. Minor correctly pointed out, they filed a

 9    motion to file a derivative claim on behalf of KiOR against my

10    clients.  They wanted to pursue it in the name of the company.

11          Now, this -- as we indicated -- now, I didn't talk

12    about it this morning, but we talked about it a good bit

13    Thursday a week ago.  There is a considerable concern about the

14    effect this lawsuit will have on the ability of them to fulfill

15    the plan because, as Mr. Quin admitted, there is only a limited

16    amount of insurance here and their claim's way in excess of the

17    amount of the insurance.

18          If that happens and insurance doesn't cover the

19    claims, KiOR is -- my client's going to look to KiOR for

20    indemnity.  That's an issue that the bankruptcy court needs to

21    take into account because the bankruptcy court has an interest

22    in making sure that that plan succeeds.

23          Your Honor, we believe there's more than sufficient

24    evidence when you add it -- add it to the presumption -- the

25    home court presumption; and, therefore, we would ask that the

1   action be transferred.

2          MR. MINOR:  Very briefly, your Honor.  In response to

3   the statement that we came forward with no evidence, that's

4   simply not true.  The evidence is there's a subordinated claim

5   filed by the State in that bankruptcy proceeding.  The evidence

6   is they filed 60 documents in that proceeding.  Unless Mr. Quin

7   is going to represent to the court that he's been hired by the

8   State to pursue some claim unrelated to the MOU, then it's

9   obvious that the issues are related.  That's why Mr. Quin has

10  the knowledge that he has.

11         The motions that were filed were all an attempt by the

12  attorney general to recover money based on the claims set forth

13  in this complaint based on the MOU.  It's true I haven't come

14  here with a bunch of documents for the court.  But, your Honor,

15  I could have certainly printed out all of the documents from

16  the bankruptcy proceeding and I could have summarized the

17  deposition testimony.

18         But the only issue that's there or the only reason why

19  they were there, your Honor, was because, as I said earlier,

20  they tried to get money back based on the investment fraud

21  theory in the complaint at the bankruptcy proceeding.  Then

22  they tried to preserve their ability to do so outside of that

23  proceeding.  And to sit here and say that that's completely

24  unrelated is simply not true.

25         The evidence is that they're related.  The evidence is

1  obvious based on the fact that the lawyers are the same, based

2  on the fact that the MOU is a part of the record in that

3  particular proceeding, based on the fact that your Honor has

4  heard no other reason why these attorneys would be interested

5  in a bankruptcy proceeding in the state of Delaware.

6       And I submit to your Honor that even though I don't

7  physically have them in front of me, the fact that there are 12

8  depositions that they participated in, the fact that there's

9  six hearings that have transcripts where they questioned

10 witnesses, the fact that they filed several motions including

11 motions that would only be filed for the purpose of trying to

12 recover money based on the same theory that we're here on today

13 is evidence.

14      And, your Honor, finally, Mr. Quin's argument in a way

15 makes my argument, because you're being asked to make a

16 decision based on lawyers' characterizations of what took place

17 in a proceeding that there is a judge who is intimately aware

18 of and who has presided over that proceeding for months.

19      And to sit here and ask your Honor to take all of

20 these factors and all of the 40 or 50 cases and all of the

21 lawyer argument about which factors in which case make more

22 sense and which factors did the judge base the decision on,

23 your Honor, we believe that it just simply makes more sense to

24 let the judge who's had the case make that decision.

25      And if that judge says they're not related, then

1   they're not related.  If that judge says they're not going to

2   impact the plan or the estate, then it won't impact the estate.

3   If that judge says that there's no jurisdiction and it should

4   be remanded, so be it.

5          But the issue is there is a court where these -- this

6   party has been actively involved for several months.  And that

7   court has more information about both the relationship between

8   this proceeding and that proceeding and how this lawsuit could

9   affect that litigation than anybody in this courtroom who's not

10  interested as an advocate on behalf of a party.

11         So, your Honor, I believe it's evident.  I only have a

12  legal pad with me, but there's extensive documentary evidence

13  of the State's involvement in that bankruptcy proceeding.

14         THE COURT:  All right.  Thank you.  Thank you all for

15  the arguments.  I start a trial in another case this afternoon,

16  and that case is supposed to go the balance of the week.

17         As soon as I finish that, then I'll have another

18  status conference with you all where, hopefully, I'll be able

19  to tell you how I'm looking at the motion to transfer and then

20  what will be the further course of the lawsuit.  So I'll be in

21  contact with you when I finish this lawsuit that I'm starting

22  this afternoon.  Thank you all so much.

23         (PROCEEDINGS CONCLUDED)

24

25

CERTIFICATE OF REPORTER

I, MARY VIRGINIA "Gina" MORRIS, Official Court Reporter, United States District Court, Southern District of Mississippi, do hereby certify that the above and foregoing pages contain a full, true and correct transcript of the proceedings had in the aforenamed case at the time and place indicated, which proceedings were recorded by me to the best of my skill and ability.

I certify that the transcript fees and format comply with those prescribed by the Court and Judicial Conference of the United States.

This the 23rd day of November, 2015.


s/ Gina Morris
U.S. DISTRICT COURT REPORTER